# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**WILLIAM SANATRA SMITH,**

    **Plaintiff,**

**v.**                      **CASE NO:**

**CITIGROUP GLOBAL MARKETS, INC.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM SANATRA SMITH, (hereinafter "Plaintiff" or "Mr. Smith"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, CITIGROUP GLOBAL MARKETS, INC. (hereinafter "Defendant," or "Citigroup") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race and retaliation in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its

implementing Regulations; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race, and retaliated against him for opposing discriminatory practices in violation of his rights under Title VII and the FCRA.

3.    As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a)

and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.      Plaintiff is a 51-year-old African American male.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on his race under Title VII and the FCRA.

10.     During the period from October 2019 until May 30, 2024, Defendant employed Plaintiff.

11.     At all times material herein, Plaintiff met the definitions of

"employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII and the FCRA.

13.    The Defendant, CITIGROUP GLOBAL MARKETS, INC., is a corporation with a principal place of business located at 388 Greenwich Street, New York, NY 10013.

14.    CITIGROUP GLOBAL MARKETS, INC. employed Plaintiff at its Tampa work location at 3800 Citibank Center, Tampa, FL 33610.

15.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida.

16.    At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII and the FCRA.

17.    Accordingly, Defendant is liable under Title VII and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

18.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

19.    On April 29, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race discrimination and retaliation.

20.    On July 29, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2024-01140) against Defendant.

21.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23.    Plaintiff William Sanatra Smith is a 51-year-old African American male with over 20 years of experience in Data Privacy

Governance, Risk and Compliance.

24.    Plaintiff holds a Bachelor's degree in Electrical Engineering with Computer Engineering from the University of Alabama, a Master's degree in Organizational Leadership from Mercy College, and a Harvard certificate in Data Privacy and Technology. He maintains multiple professional certifications including Certified Information Privacy Technologies, Certified Compliance and Ethics Professional, and GRCP (Governance Risk and Compliance Professional).

25.    Plaintiff honorably served in the United States Air Force from May 1993 to April 1996 and in the United States Air Force Reserve from April 1996 to December 2002, achieving the rank of Senior Airman.

26.    In October 2019, Defendant hired Plaintiff directly into a Senior Vice President (SVP) role in the ICG (Institutional Client Group) Data Privacy department at an annual salary of $163,000, later increased to $168,000 in 2022 and approximately $171,000 at the time of his termination.

27.    During his employment, Plaintiff held various positions including ICG OTRC Privacy Lead, ICG NAM Privacy Lead, and ICG Data Governance and Controls Lead, demonstrating his expertise and value to the organization.

28.    From October 2019/2020 through April 2022, Plaintiff reported to Catherine Nance Patrick, a Caucasian female from the "hills of Tennessee" who served as Director of ICG Operations and Technology Privacy.

29.    Throughout his tenure under Ms. Patrick's supervision, Plaintiff was subjected to persistent and escalating discriminatory treatment based on his race, including exclusion from meetings, verbal abuse, humiliation in front of colleagues, and disparate treatment compared to his white colleagues.

30.    Beginning in 2020, Ms. Patrick repeatedly excluded Plaintiff from meetings on projects he was leading or supporting while not excluding white colleague Angie Montalvo from similar meetings.

31.    Ms. Patrick instructed others, including Plaintiff's direct report Tim McCloskey, not to invite Plaintiff to meetings and not to share information with him, effectively isolating him from his own work responsibilities.

32.    On September 20, 2020, Ms. Patrick became hostile and yelled at, berated, and humiliated Plaintiff in front of the entire CCPA Project Team for approximately 20 minutes, claiming he did not action a task from a prior meeting that the Plaintiff was excluded from and "should have known"

about the meeting outcome despite confirming he had been excluded.

33.    Following this incident, colleague Ashley Harmon called Plaintiff to express her concern about Ms. Patrick's hostile treatment towards him.

34.    On October 8, 2020, Ms. Patrick denied Plaintiff's request for additional resources to manage his heavy workload but approved white colleague Angie Montalvo's request for additional resources, despite Plaintiff having a heavier workload than Ms. Montalvo.

35.    On February 11, 2021, Ms. Patrick became hostile and yelled at Plaintiff for over 30 minutes in front of the entire team over an error in a slide deck that was actually caused by Atoyan "Jack" Hagop, not Plaintiff. When white colleague Angie Montalvo made a similar error, Ms. Patrick did not yell at her or subject her to public humiliation.

36.    On May 27, 2021, Ms. Patrick became hostile and yelled at Plaintiff about his approach for completing a project milestone, until white male direct report Paul Rutter Fifer agreed with Plaintiff's position, demonstrating that her hostility was not based on the merits of Plaintiff's work but on his race.

37.    On July 13, 2021, Ms. Patrick subjected Plaintiff to a 26-minute

verbal attack during a team meeting in front of colleagues and clients, further demonstrating her pattern of racially motivated hostility.

38.    In September 2021, Ms. Patrick repeatedly undermined Plaintiff's ability to manage his team by reassigning tasks back to him that he had properly delegated to his direct reports, while not interfering with white colleagues' management of their teams, forcing Plaintiff to do the "entire book of work while members of their team had little-to-nothing to do."

39.    On October 12, 2021, Ms. Patrick again instructed Plaintiff's direct report Tim McCloskey not to invite Plaintiff to meetings and not to share information with him, further isolating Plaintiff from his work responsibilities.

40.    On October 25, 2021, Ms. Patrick called Plaintiff a "guinea pig" and told him "it didn't matter what he thought," and when Plaintiff questioned the disparate treatment, she responded "Because I told you so," demonstrating her discriminatory animus.

41.    During his tenure under Ms. Patrick's supervision, Plaintiff was required compelled and constrained to work "12, 14 hour days, including weekends" for two and a half years, while similarly situated white

colleagues were not subjected to such excessive work demands.

42.    Ms. Patrick made statements in large forums such as "we need to hire more women" and "all we girls got to stick together," demonstrating her bias against African American men in the workplace.

43.    Ms. Patrick expressed reluctance to work with African American female employee, Adefunke Oluwajana, requesting to work with white male John Sweeney instead, further evidencing her racial bias.

44.    On December 17, 2021, three days before Christmas vacation, Ms. Patrick specifically called Plaintiff to inform him of his poor rating, stating "I just wanted to touch bases before leaving for the holidays. I want to let you know you're getting a poor leadership rating," despite positive stakeholder feedback and Plaintiff completing his entire workload, Ms. Patrick gave Plaintiff a "partially meets" leadership rating of 4, the lowest possible rating and then smiled, demonstrating her pleasure in delivering discriminatory treatment during the holiday season.

45.    On January 6, 2022, Ms. Patrick accused Plaintiff of providing inaccurate status reports but was unable to provide any specifics when challenged by Plaintiff.

46.    On January 18, 2022, Ms. Patrick admitted she had not used

stakeholder feedback in evaluating Plaintiff's performance, contrary to company policy and despite the positive feedback Plaintiff had received.

47.     On January 24, 2022, in retaliation for Plaintiff's complaints about his excessive workload and discriminatory treatment, Ms. Patrick demoted Plaintiff from ICG O&T Privacy Lead to NAM Privacy Lead, stripped the Plaintiff of his direct reports, and assigned additional responsibilities.

48.     On January 27, 2022, Ms. Patrick informed Plaintiff he was not eligible for a bonus due to his low leadership rating and subjected him to hostile humiliation in front of his peers for approximately 15 minutes over information from a meeting he had been excluded from.

49.     Ms. Patrick told Plaintiff "she couldn't trust me" without providing any reason or justification for this statement.

50.     Throughout this period, Ms. Patrick consistently subjected Plaintiff to "disparate treatment," "bullying," "uncalled for aggression," "humiliation in front of peers," and "disrespected, punished, isolated, ignored and verbally abused" him based on his race.

51.     In contrast, white colleague Angie Montalvo confirmed that "Catherine never excludes her from meetings" and "Catherine never does

that to her," and stated that "Catherine has always gotten away with this type of behavior."

52.　White male colleague Paul Rutter Fifer, who was Ms. Patrick's friend and she attended his wedding, received preferential treatment including a "significant pay boost" when transferred to a different team, while Plaintiff received no additional compensation for the same type of transfer.

53.　Recognizing the pattern of discrimination, Plaintiff filed HR Case ID HRC3864997 on July 21, 2021, complaining of hostile work environment with HR representative Minal Rishi, which was escalated to Brigitte Green but ultimately closed on January 18, 2022, with the finding that Ms. Patrick's harsh treatment was "no different from how she conducts herself with others," despite evidence to the contrary.

54.　On January 19, 2022, Plaintiff filed HR Case ID HRC5161454 regarding the unfair performance review, which was closed on February 5, 2022, without proper investigation.

55.　On January 20, 2022, Plaintiff filed Ethics Report #941466989601 regarding retaliatory hostile work environment, which was investigated by Kimberly Glenn and closed on June 27, 2022, with the finding that the

behavior didn't meet the definition of hostile work environment based on race, despite documented evidence of racial discrimination.

56.     After Plaintiff complained about discrimination, Ms. Patrick told African American colleague Angela Davis "not to engage" Plaintiff on work projects and instructed her "entire new team, don't engage him," in an effort to further isolate and retaliate against Plaintiff.

57.     In October/November 2022, Plaintiff was transferred to report to Amanda Kopy Jordan, who served as Director of ICG Data Privacy.

58.     Under Ms. Jordan's supervision, Plaintiff continued to experience discriminatory treatment based on his race, including hostile confrontations, unrealistic performance expectations, and retaliatory actions following his compliance concerns.

59.     On February 14, 2023, Plaintiff raised compliance and process risk concerns during a work discussion with Ms. Jordan and Amanda Morgan regarding the global individual rights process. Ms. Jordan became hostile with the Plaintiff for highlighting issues that directly impact his ability to perform his job effectively.

60.     On February 24, 2023, when Plaintiff raised compliance risks during a work discussion, Ms. Jordan became defensive and hostile,

suggesting he wasn't a "good fit for the front offices" and should apply for roles in Compliance or Technology, implying his race made him unsuitable for client-facing roles.

61.    On March 1, 2023, Ms. Jordan accused Plaintiff of being hostile toward white colleague Kelly Fillingham when Plaintiff merely voiced legitimate procedural concerns.

62.    On March 8, 2023, Ms. Jordan criticized Plaintiff's facial expressions and body language during a prior meeting between the Plaintiff and Mabel Pineros and told him to be mindful of his communication style, subjecting him to racially motivated tone policing that was not applied to white colleagues.

63.    From March 21-30, 2023, Ms. Jordan engaged in a series of hostile email exchanges with Plaintiff, becoming increasingly aggressive over routine work matters.

64.    On May 11-12, 2023, during a hostile exchange over a shared mailbox issue, Ms. Jordan accused Plaintiff of being "insubordinate and trying to be dominant" when he raised legitimate compliance concerns and insisted he produce a screenshot of a non-existent shared mailbox.

65.    On May 25, 2023, Ms. Jordan attempted to force Plaintiff to

provide inaccurate information to the compliance testing team/internal audit, putting Plaintiff in an impossible position of compromising his professional integrity or facing retaliation.

66.    On June 1, 2023, immediately after Plaintiff raised compliance concerns to the Internal Compliance Department, Ms. Jordan placed Plaintiff on a Performance Improvement Plan (PIP) in direct retaliation for his protected activity.

67.    On June 13, 2023, Ms. Jordan gave Plaintiff an unrealistic one-week deadline to complete a technology business case for 120 applications that consulting firm Baringa was given 6-8 months to complete, setting him up for failure.

68.    On September 13, 2023, Ms. Jordan gave Plaintiff a harsh mid-year review, citing meeting deck "inaccuracies" that were actually in draft documents, while not holding other team members to the same impossible standard.

69.    On October 13, 2023, Ms. Jordan refused to provide assistance to Plaintiff for four rights requests despite having no direct reports, while providing assistance to white colleagues for similar requests.

70.    From November 1-9, 2023, Ms. Jordan criticized Plaintiff for

following documented procedures, stating "someone at your level should have known" to use a different approach, again holding him to different standards than white colleagues.

71.    On January 4, 2024, Ms. Jordan gave Plaintiff a low rating of "4" in all areas except one on his year-end performance review, continuing the pattern of discriminatory evaluations.

72.    Ms. Jordan told team member Aishwarya Jadhav "not to worry about the format because Aishwarya had more important things to do, and that the Plaintiff could correct the formatting of the slides," demonstrating disparate treatment in work assignments.

73.    When colleague Marci Jena served as Plaintiff's backup during his FMLA leave, Ms. Jordan provided additional resources to assist her, but refused to provide the same assistance to Plaintiff when he returned to handle the same responsibilities.

74.    Throughout 2023, Ms. Jordan repeatedly told the team that "jobs of everyone on the privacy team were safe and no one would be laid off," providing false assurances while planning Plaintiff's termination.

75.    Despite Plaintiff's complaints to HR, including a complaint submitted by the Internal Compliance Department against Ms. Jordan on

May 31, 2023, a complaint regarding PIP placement on June 5, 2023, and a complaint to HR representative Kendra Maynard on December 22, 2023, all complaints were either not substantiated or closed without proper investigation.

76.    On March 25, 2024, Plaintiff was informed by Beverley Aspeling (COO/CDGO) and HR representative Emily Chen via Teams meeting that he was being laid off effective April 12, 2024, due to "organizational restructuring," making him "the sole individual subjected to a reduction in force on Ms. Jordan's team."

77.    On March 27, 2024, just two days after Plaintiff's layoff notification, Beverley Aspeling published an organization chart showing six vacant positions that Plaintiff could have filled.

78.    On April 6, 2024, Ms. Patrick emailed about three critical posted roles, including two C-15 positions specifically under her supervision: Data Privacy Senior Group Manager C-15 (Job ID: 24735400) and Data Privacy & Protection/Information Management Operations Lead C-15 (Job ID: 24735405), with salary ranges of $170,000 to $300,000, significantly more than Plaintiff's $171,000 salary.

79.    Within two to three days after Plaintiff's termination, three

director positions were posted, demonstrating that the "reorganization" was pretextual and designed to eliminate Plaintiff based on his race.

80.    Other team members were transferred to new positions without having to reapply, but Plaintiff was told he had to "apply for a job," demonstrating disparate treatment in the layoff process.

81.    Plaintiff's responsibilities were absorbed by Ms. Patrick's team, and Plaintiff suspects "Catherine's significant input in their selection for the reduction in force."

82.    The impact of Plaintiff's termination on organizational diversity was significant: in Plaintiff's former role, there were 5 SVPs (1 African American, 1 Asian, 3 Caucasian), but in the new organizational structure, there were 10 SVPs (0 African American, 1 Asian, 1 Latino, 8 Caucasian), eliminating the only African American SVP from the team.

83.    Before Plaintiff joined the organization, "another African American" male experienced similar discriminatory treatment from Ms. Patrick and was ultimately terminated, establishing a pattern of racial discrimination.

84.    African American colleague Angela Davis (EEOC #511-2024-01113) came to Plaintiff "in tears" complaining about Ms. Patrick's

discriminatory treatment and experienced similar discrimination, further evidencing the pattern of racial bias.

85.    Plaintiff accurately predicted that Ms. Patrick would "isolate you so other people aren't engaging... exclude you from meetings... give you a poor leadership rating," which occurred exactly as he predicted for both himself and Ms. Davis.

86.    Ms. Patrick "consistently created repeat work cycles for Angela, aiming to stress and suppress her" and "attempted to sabotage their work performance by telling Angela not to engage them."

87.    Based on the pattern of discriminatory conduct, Plaintiff believes Ms. Patrick "has issues with African Americans and African American men, plain and simple."

88.    Throughout his employment, Plaintiff observed that other SVPs on his team with less experience made "significantly more" than his $171,000 salary, and he believes "other non-African American similarly situated employees within my group (both male and female) earn a higher base salary than me."

89.    As a direct result of the discriminatory treatment, Plaintiff went into "significant depression" and "been on medication," stating "I was in

perfect health till I started working Citi. No high blood pressure, no anxiety, no depression."

90.    The discriminatory treatment caused Plaintiff to lose relationships due to excessive work demands and suffer medical issues that he attributes directly to the employment discrimination.

91.    Plaintiff received his final compensation of $8,663.60 after taxes on June 5, 2024, representing his bi-monthly salary plus accrued leave balance.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1981
## (RACE DISCRIMINATION)

92.    Plaintiff, WILLIAM SANATRA SMITH ("Plaintiff"), re-alleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

93.    Plaintiff is an African American male and a member of a protected class under 42 U.S.C. §1981.

94.    Defendant employed Plaintiff from October 2019 until his termination on or about April 12, 2024.

95.    Throughout his employment, Plaintiff was qualified for his positions, consistently met or exceeded expectations, and performed his duties with skill and professionalism.

96.    Plaintiff was subjected to disparate treatment, harassment, and adverse employment actions because of his race.

97.    Plaintiff's supervisor, Catherine Nance Patrick, subjected him to repeated humiliation, exclusion from meetings, verbal abuse, denial of resources, and disparate discipline and evaluations compared to similarly situated white employees.

98.    Ms. Patrick also made statements and engaged in conduct reflecting racial bias, including referring to Plaintiff as a "guinea pig," telling him "it didn't matter what he thought," and making statements that "all we girls have to stick together," while systematically excluding African American employees from opportunities.

99.    Plaintiff's performance ratings and compensation were adversely impacted by discriminatory animus. He received a "partially meets" rating and was denied bonuses, while white colleagues with comparable or inferior performance received higher ratings and additional pay.

100.  Plaintiff was demoted from ICG O&T Privacy Lead to NAM Privacy Lead without legitimate reason and ultimately selected for termination under the pretext of a "reorganization," even though comparable positions were subsequently posted and filled by non-African American employees.

101. Defendant's stated reason for terminating Plaintiff—organizational restructuring—was pretextual. The true motivating factor was race discrimination.

102.  Defendant's actions deprived Plaintiff of the same right to make and enforce contracts, as is enjoyed by white citizens, in violation of 42 U.S.C. §1981.

103.  As a direct and proximate result of Defendant's racially discriminatory conduct, Plaintiff suffered loss of income, loss of career opportunities, humiliation, embarrassment, mental anguish, emotional distress, and other damages.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter judgment in his favor and against Defendant;

B.    Award compensatory damages for lost wages, benefits, and emotional distress;

C.    Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

D.    Grant such other and further relief as the Court deems just and proper.

## <u>COUNT II</u>
## VIOLATION OF 42 U.S.C. § 1981
## (RETALIATION)

104.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

105.    Plaintiff engaged in protected activity under 42 U.S.C. §1981 by opposing and reporting race discrimination, harassment, and disparate treatment to Human Resources and Defendant's Ethics and Compliance departments.

106.    Specifically, Plaintiff made multiple complaints including:

a.    HR Case ID HRC3864997 (July 21, 2021);

b.    HR Case ID HRC5161454 (January 19, 2022);

c.    Ethics Report #941466989601 (January 20, 2022); and

d.    Additional complaints in 2023 to HR and Internal Compliance.

107. Following these protected complaints, Defendant and its agents, including Ms. Patrick and Ms. Amanda Kopy Jordan, subjected Plaintiff to retaliatory conduct, including:

      a.    Demotion from ICG O&T Privacy Lead to NAM Privacy Lead;

      b.    Denial of bonuses and professional development opportunities;

      c.    Placement on a baseless Performance Improvement Plan ("PIP") immediately after Plaintiff raised compliance and discrimination concerns;

      d.    Harsh and unequal performance reviews;

      e.    Public criticism, verbal attacks, and isolation; and

      f.    Termination under the pretext of "restructuring" after Plaintiff's continued opposition to discriminatory practices.

108. Defendant's actions were materially adverse and would dissuade a reasonable employee from making or supporting complaints of discrimination.

109.    Defendant's stated reasons for the adverse actions were false and pretextual. The true reason for the retaliation was Plaintiff's protected activity in opposing race-based discrimination.

110.    Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's federally protected rights under §1981.

111.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered lost wages, emotional distress, reputational harm, and loss of professional standing.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter judgment in his favor and against Defendant;

B.    Award back pay, front pay, and lost benefits;

C.    Award compensatory damages for emotional pain, suffering, and mental anguish;

D.    Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

F.    Grant such other and further relief as this Court deems just and proper.

## COUNT III
## HOSTILE WORK ENVIRONMENT BASED ON RACE
## IN VIOLATION OF 42 U.S.C. §1981

112.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

113.   Plaintiff, as an African American male, is protected under 42 U.S.C. §1981, which guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens.

114.   Defendant, through its managers and agents including Catherine Nance Patrick and Amanda Kopy Jordan, subjected Plaintiff to a racially hostile work environment that interfered with his right to enjoy the benefits, privileges, terms, and conditions of his employment contract.

115.   The harassment and disparate treatment were intentional, severe, and pervasive, and included:

      a.     Repeated yelling, humiliation, and disparagement in front of colleagues;

      b.     Systematic exclusion from meetings and work-related communications;

      c.     Disparate treatment in workload, support, and performance evaluations;

      d.    Racially motivated comments and instructions to others not to engage with Plaintiff; and

      e.    Retaliatory hostility after Plaintiff complained about discrimination and retaliation.

116. Defendant's conduct was motivated by racial animus and carried out with malice or reckless indifference to Plaintiff's federally protected rights.

117. Defendant knew or should have known of the ongoing harassment and failed to take appropriate corrective action.

118. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment.

119. As a direct and proximate result, Plaintiff suffered lost wages, lost career opportunities, emotional distress, humiliation, and mental anguish.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

    A.    Enter judgment in his favor and against Defendant;

    B.    Award compensatory damages for emotional distress, humiliation, and loss of enjoyment of life;

C.      Award back pay, front pay, and lost benefits;

D.      Award attorney's fees and costs pursuant to 42 U.S.C. §1988; and

F.      Grant such other and further relief as the Court deems just and

proper.

## COUNT IV
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Race Discrimination

120.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

121.   Plaintiff is a 51-year-old African American male.

122.   At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

123.   Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or

receivers." 42 U.S.C. § 2000e(a).

124.    Plaintiff was subjected to severe and pervasive discrimination by Catherine Nance Patrick and Amanda Kopy Jordan based on his race, including but not limited to exclusion from meetings, verbal abuse, humiliation in front of colleagues, disparate treatment in work assignments, unfair performance evaluations, denial of resources, and ultimately termination.

125.    Defendant's supervisors and managers, including Catherine Nance Patrick and Amanda Kopy Jordan, repeatedly subjected Plaintiff to discriminatory treatment that would not have occurred but for his race as an African American male.

126.    Similarly situated white employees, including Angie Montalvo, Paul Rutter Fifer, Kelly Fillingham,  and others, were not subjected to the same hostile treatment, exclusion from meetings, verbal abuse, or disparate performance evaluations that Plaintiff endured.

127.    Defendant knew or should have known of the discrimination suffered by Plaintiff through multiple HR complaints filed on July 21, 2021, January 19, 2022, January 20, 2022, May 31, 2023, June 5, 2023, and December 22, 2023.

128. Despite documented evidence and witness testimony supporting Plaintiff's complaints of racial discrimination, Defendant failed to take adequate remedial action to prevent or correct the discriminatory conduct.

129. Defendant violated Title VII by subjecting Plaintiff to discrimination because of his race by failing to promptly correct the discriminatory behavior of Catherine Nance Patrick and Amanda Kopy Jordanand by ultimately terminating Plaintiff's employment in a discriminatory reduction in force.

130. Defendant's discriminatory conduct created and fostered a racially hostile work environment that materially altered the terms and conditions of Plaintiff's employment.

131. The discriminatory treatment was severe and pervasive, including regular exclusion from work meetings, public humiliation and verbal abuse, disparate work assignments, and ultimately culminating in Plaintiff's discriminatory termination.

132. Plaintiff did not welcome the discrimination and did not directly or indirectly invite or solicit the discrimination by his own acts or statements.

133. The conduct of Defendant, by and through its employees,

supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived him of statutory rights under Title VII.

134. Defendant's actions constitute discrimination in violation of Title VII.

135. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, WILLIAM SANATRA SMITH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CITIGROUP GLOBAL MARKETS, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant

has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on his race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

136.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

137.    Plaintiff is a 51-year-old African American male employed by Defendant from October 2019 until May 30, 2024.

138.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

139.    Plaintiff engaged in protected activity under Title VII by filing HR complaints on July 21, 2021 (HR Case ID HRC3864997), January 19, 2022 (HR Case ID HRC5161454), January 20, 2022 (Ethics Report #941466989601), May 31, 2023, June 5, 2023, and December 22, 2023, complaining of racial discrimination and hostile work environment.

140. Plaintiff engaged in protected activity by opposing discriminatory practices, including but not limited to challenging exclusion from meetings, questioning disparate treatment, and raising concerns about compliance violations when forced to provide inaccurate information.

141. Defendant, through Catherine Nance Patrick and Amanda Kopy Jordan, was aware of Plaintiff's protected activity and complaints of racial discrimination.

142. Following Plaintiff's protected activity, Defendant subjected him to materially adverse employment actions, including but not limited to: demotion from ICG O&T Privacy Lead to NAM Privacy Lead on January 24, 2022; denial of bonus eligibility; placement on a Performance Improvement Plan on June 1, 2023; poor performance evaluations; increased hostility and verbal abuse; isolation from colleagues and work responsibilities; and ultimately termination on April 12, 2024.

143. Catherine Nance Patrick retaliated against Plaintiff by demoting him on January 24, 2022, immediately after his complaints about workload and discriminatory treatment, and by instructing colleagues including Angela Davis not to engage with Plaintiff on collaborative work projects.

144. Amanda Jordan Kopy retaliated against Plaintiff by placing him

on a Performance Improvement Plan on June 1, 2023, immediately after he raised compliance concerns to the Internal Compliance Department, and by subjecting him to increasingly harsh performance evaluations and impossible deadlines designed to set him up for failure.

145.   The retaliatory conduct was materially adverse and would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

146.   A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against him, as evidenced by the timing and escalating nature of the retaliatory conduct following each complaint.

147.   Defendant's stated reasons for the adverse employment actions were pretextual and designed to mask the true retaliatory motive.

148.   The retaliatory conduct culminated in Plaintiff's discriminatory termination on April 12, 2024, making him "the sole individual subjected to a reduction in force on Ms. Jordan's team" despite available positions and his qualifications.

149.   Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity opposing racial discrimination in the

workplace.

150.   The conduct of Defendant, by and through its employees, supervisors, managers, and agents, constituted unlawful retaliation in violation of Title VII.

151.   As a direct, proximate and foreseeable result of Defendant's aforementioned retaliatory actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, WILLIAM SANATRA SMITH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CITIGROUP GLOBAL MARKETS, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for

opposing discriminatory practices;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.     Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.     Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff his attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## <u>COUNT VI</u>
## HOSTILE WORK ENVIRONMENT BASED ON RACE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C. §2000e et seq.)

152.    Plaintiff, WILLIAM SANATRA SMITH ("Plaintiff"), re-alleges and incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

153.    Plaintiff is an African American male and a member of a protected class under Title VII.

154.    Defendant is an employer within the meaning of Title VII, engaged in an industry affecting commerce, and employs more than fifteen (15) employees.

155.    During Plaintiff's employment, his supervisors, including Catherine Nance Patrick and Amanda Kopy Jordan, subjected him to a racially hostile work environment.

156.    The harassment was pervasive, severe, and continuous over multiple years and included, but was not limited to:

a.   Repeated public humiliation, yelling, and verbal attacks in meetings;

b.   Exclusion from work meetings and communications that were integral to his job responsibilities;

c.   Denial of resources and support provided to white colleagues;

d.   Assignment of excessive workloads compared to similarly situated white employees;

e.   Demeaning and racially charged comments such as referring to Plaintiff as a "guinea pig," telling him "it didn't matter what he thought," and promoting an exclusionary "all we girls stick together" culture;

f.   Isolating Plaintiff by instructing colleagues not to engage with him; and

g.   Disparate treatment in performance evaluations, compensation, and opportunities.

157.  The conduct of Ms. Patrick and Ms. Jordan was unwelcome, intentional, and motivated by racial bias.

158.   Defendant knew or should have known of the harassment through Plaintiff's repeated complaints to Human Resources and the Ethics and Compliance departments, but failed to take prompt and effective remedial action.

159.   The harassment unreasonably interfered with Plaintiff's work performance and created an abusive, hostile, and intolerable working environment.

160.   As a result of Defendant's failure to prevent and correct the harassment, Plaintiff suffered loss of income, professional reputation, and emotional distress.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter judgment in his favor and against Defendant;

B.    Award compensatory damages for emotional distress, humiliation, and loss of enjoyment of life;

C.    Award back pay, front pay, and lost benefits;

D.    Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(k); and

F.    Grant such other and further relief as the Court deems just and proper.

## COUNT VII
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTES §§ 760.01-11**
**Race Discrimination**

161.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

162.   Plaintiff is a 51-year-old African American male who is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of his race.

163.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

164.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

165.   At all times material herein, Defendant was and is an "employer"

within the meaning of the FCRA, § 760.02(7), Florida Statutes.

166.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's race.

167.   As Plaintiff's employer, Defendant was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

168.   Defendant violated the FCRA by, among other things, failing to promptly correct the discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of his race through Catherine Nance Patrick and Amanda Kopy Jordan.

169.   Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, and privileges of his employment with Defendant.

170.   The discriminatory conduct included systematic exclusion from meetings, public verbal abuse and humiliation, disparate treatment in work assignments and performance evaluations, denial of resources provided to

white colleagues, and ultimately discriminatory termination.

171.   Similarly situated white employees were treated more favorably than Plaintiff and were not subjected to the same pattern of discriminatory conduct.

172.   The discriminatory treatment was severe and pervasive, materially altering the terms and conditions of Plaintiff's employment and creating a hostile work environment based on race.

173.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

174.   Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race.

175.   Defendant is liable for the discrimination alleged herein, and these actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the FCRA.

176.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to

suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, WILLIAM SANATRA SMITH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CITIGROUP GLOBAL MARKETS, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Civil Rights Act, §§ 760.01-760.11, Florida Statutes, discriminating against Plaintiff based on his race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and

any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.      Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VIII
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Florida Statutes §§ 760.01-760.11

177.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

178.   Plaintiff is a 51-year-old African American male employed by Defendant from October 2019 until May 30, 2024.

179.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

180.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, and an "employer" within the meaning of the FCRA, § 760.02(7), Florida Statutes.

181.   Plaintiff engaged in protected activity under the FCRA by filing complaints of racial discrimination with HR on July 21, 2021, January 19, 2022, January 20, 2022, May 31, 2023, June 5, 2023, and December 22, 2023, and by opposing discriminatory practices in the workplace.

182.   Plaintiff engaged in protected activity by challenging exclusion from meetings based on race, questioning disparate treatment compared to

white colleagues, and refusing to comply with requests that would compromise his professional integrity when forced to provide inaccurate information.

183.    Defendant, through its supervisors and managers Catherine Nance Patrick and Amanda Kopy Jordan, was aware of Plaintiff's protected activity opposing racial discrimination.

184.    Following Plaintiff's protected activity, Defendant subjected him to materially adverse employment actions constituting unlawful retaliation under the FCRA.

185.    The retaliatory conduct included: demotion from ICG O&T Privacy Lead to NAM Privacy Lead on January 24, 2022; denial of bonus eligibility; placement on a Performance Improvement Plan on June 1, 2023; harsh and unfair performance evaluations; increased hostility and isolation; and ultimately discriminatory termination on April 12, 2024.

186.    A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as evidenced by the timing and escalating nature of the retaliatory conduct following each complaint of discrimination.

187.    The retaliatory conduct was materially adverse and would have

dissuaded a reasonable employee from making or supporting a charge of discrimination.

188.   Defendant's stated reasons for the adverse employment actions were pretextual and designed to mask the true retaliatory motive for opposing racial discrimination.

189.   Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity opposing racial discrimination in the workplace.

190.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent retaliatory conduct, deprived Plaintiff of statutory rights under the FCRA.

191.   As a direct, proximate, and foreseeable result of Defendant's aforementioned retaliatory actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses

proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, WILLIAM SANATRA SMITH, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, CITIGROUP GLOBAL MARKETS, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Civil Rights Act, §§ 760.01-760.11, Florida Statutes, by retaliating against Plaintiff for opposing discriminatory practices;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to the

FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IX
### HOSTILE WORK ENVIRONMENT BASED ON RACE
### IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FCRA)
### (Fla. Stat. §760.01 et seq.)

192.    Plaintiff re-alleges and incorporates by reference paragraphs 23 through 91 as if fully set forth herein.

193.    Plaintiff is an African American male and a member of a protected class under the Florida Civil Rights Act ("FCRA").

194.   Defendant is an employer within the meaning of the FCRA and is engaged in an industry affecting commerce in the State of Florida.

195.   During his employment, Plaintiff was subjected to a racially hostile work environment created and perpetuated by supervisors and agents of Defendant, including Catherine Nance Patrick and Amanda Kopy Jordan.

196.   The harassment was continuous, severe, and objectively and subjectively offensive, including but not limited to:

    a.    Public humiliation, verbal abuse, and yelling in meetings;

    b.    Exclusion from meetings and communications necessary to perform his duties;

    c.    Denial of resources and assistance provided to white employees;

    d.    Excessive workload requirements that were not imposed on similarly situated white colleagues;

    e.    Racially biased remarks and isolation from coworkers; and

    f.    Retaliatory hostility after Plaintiff complained about discrimination.

197.    Plaintiff repeatedly reported this discriminatory conduct to Human Resources and Defendant's Ethics Department, but Defendant failed to take prompt, thorough, and effective remedial action.

198.    Defendant's actions and omissions allowed the racially hostile environment to persist and worsen, leading to Plaintiff's severe emotional distress, professional harm, and eventual termination.

199.    The conduct described herein constitutes a violation of the Florida Civil Rights Act's prohibition on discrimination with respect to the terms, conditions, and privileges of employment based on race.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.    Enter judgment in his favor and against Defendant;

B.    Award compensatory damages for emotional distress, mental anguish, and loss of dignity;

C.    Award back pay, front pay, and lost benefits;

D.    Award attorney's fees and costs pursuant to Fla. Stat. §760.11(5); and

F.    Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 8th day of October 2025.

*/s/ Jason W. Imler, Esq*

Jason W. Imler

Florida Bar No. 1004422

Alberto "Tito" Gonzalez

Florida Bar No. 1037033

**Imler Law**

23110 State Road 54, Unit 407

Lutz, Florida 33549

(P): 813-553-7709

Jason@ImlerLaw.com

Tito@ImlerLaw.com

Ashley@ImlerLaw.com

Tiffany@ImlerLaw.com
